1

2

3

4

5              UNITED STATES DISTRICT COURT

6            EASTERN DISTRICT OF WASHINGTON

7    UNITED STATES OF AMERICA,

8                        Plaintiff,        NO:  2:14-CR-0001-TOR-2

9          v.                              ORDER RE: PRETRIAL MOTIONS

10   STEVEN RAY ROOT,

11                       Defendant.

12        BEFORE THE COURT are Defendant's Motion for Bill of Particulars (ECF

13   No. 141), Motion to Suppress Evidence Seized (ECF No. 142), Motion to

14   Dismiss/Challenge Sufficiency of Indictment (ECF No. 167), Motion to Suppress

15   Pole Camera Evidence (ECF No. 168), Motion to Dismiss Case re: Speedy Trial

16   Violation (ECF No. 171), Motion to Suppress Statements (ECF No. 188), and

17   Motion for Disclosure of Brady Material (ECF No. 189), as well as the

18   Government's responsive briefing on each motion.  A pretrial conference and

19   evidentiary hearing was held on September 19, 2014, in Spokane.  The

20   Government was represented by Caitlin A. Baunsgard.  The Defendant was present

ORDER RE: PRETRIAL MOTIONS ~ 1

1    with his counsel, Douglas D. Phelps.  The Court has reviewed the motions and

2    accompanying pleadings, heard from counsel and is fully informed.

3        **1.  Motion for Bill of Particulars (ECF No. 141)**

4        Defendant seeks specific information by which the United States seeks to

5    prove the case against him.  For instance, Defendant seeks the specific dates,

6    statements, overt acts, events, and conversations upon which the prosecution will

7    rely to establish the charged conspiracy.  ECF No. 141 at 1–3.

8        A bill of particulars has three purposes:  to apprise the defendant of the

9    specific charges being presented so as to minimize surprise at trial, to aid the

10   defendant in preparing for trial, and to protect against double jeopardy.  *United*

11   *States v. Burt*, 765 F.2d 1364, 1367 (9th Cir. 1985) (citing *United States v. Long*,

12   706 F.2d 1044, 1054 (9th Cir. 1983)); *United States v. Ayers*, 924 F.2d 1468,

13   1483–84 (9th Cir. 1991).  In general, where the indictment notifies the defendant

14   of the charges against her and the approximate dates of her alleged illegal conduct,

15   a bill of particulars is not warranted to ascertain the exact dates of the conduct.

16   *United States v. DiCesare*, 765 F.2d 890, 897–898 (9th Cir. 1985) (Defendants

17   "requested a bill for three reasons: (1) to obtain the names of any unknown

18   coconspirators; (2) to determine the exact date on which the conspiracy allegedly

19   began; and (3) to delineate all other overt acts that comprised the charged activity.

20   These reasons, however, do not warrant a bill of particulars.") (citations omitted).

ORDER RE: PRETRIAL MOTIONS ~ 2

The Superseding Indictment (combined with the discovery provided in this case) sufficiently informs Defendant of the specific charges being presented so as to minimize surprise at trial, to aid the defendant in preparing for trial, and to protect against double jeopardy.  This motion is denied.

### 2.  Motion to Suppress Evidence Seized (ECF No. 142)

Defendant seeks an order suppressing all evidence obtained during the execution of a search warrant at his residence and car.  He contends the affidavit in support of the warrant (reproduced at ECF No. 142 at 45–51) did not establish sufficient probable cause.

Under the Fourth Amendment, a search warrant may not issue without probable cause.  U.S. CONST. amend. IV.  The determination whether probable cause exists is a "practical, common-sense decision" made in light of the totality of the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  In determining whether a search warrant was based upon probable cause, this Court is "limited to the information and circumstances contained within the four corners of the underlying affidavit."  *Crowe v. Cnty of San Diego*, 608 F.3d 406, 434 (9th Cir. 2010) (quoting *United States v. Stanert*, 762 F.2d 775, 778, *amended on other grounds*, 769 F.2d 1410 (9th Cir. 1985)).

Review of a magistrate judge's determination that probable cause existed for a warrant is deferential; "the duty of a reviewing court is simply to ensure that the

ORDER RE: PRETRIAL MOTIONS ~ 3

1    magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause

2    existed." *Gates*, 462 U.S. at 238–39; *see also United States v. Kelley*, 482 F.3d

3    1047, 1050 (9th Cir. 2007) ("Normally, we do not 'flyspeck' the affidavit

4    supporting a search warrant through *de novo* review; rather, the magistrate judge's

5    determination should be paid great deference." (internal quotation marks omitted)).

6
         For probable cause to exist, a magistrate need not determine that the
         evidence sought is *in fact* on the premises to be searched, or that the
7        evidence is more likely than not to be found where the search takes place.
         The magistrate need only conclude that it would be reasonable to seek the
8        evidence in the place indicated in the affidavit.

9    *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004) (quoting *United States*

10   *v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985), *overruled on other grounds*,

11   *Gomez v. United States*, 490 U.S. 858 (1989)) (emphasis in original).   In

12   evaluating affidavits which, as here, contain hearsay information supplied by a

13   witness to a police officer, the magistrate's task "is simply to make a practical,

14   common-sense decision whether, given all the circumstances set forth in the

15   affidavit before him, including the 'veracity' and 'basis for knowledge' of person[]

16   supplying hearsay information, there is a fair probability that contraband or

17   evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238;

18   *see also United States v. Miller*, 753 F.2d 1475, 1479 (9th Cir. 1985).

19        In this case, the victim's testimony placed her in Defendant's house

20   overnight where she observed substantial quantities of methamphetamine as well

ORDER RE: PRETRIAL MOTIONS ~ 4

as firearms, where she smoked methamphetamine with Defendant, and during

which time Defendant told her that he had obtained the house in exchange for

$25,000 in methamphetamine.  Satisfying one prong of the *Gates* analysis, the

victim had a strong basis of knowledge:  recent first-hand observation of

contraband and evidence in Defendant's residence.

Defendant's argument, as focused in his supplemental briefing, centers on

the second *Gates* prong.  He argues there were insufficient indicia of the veracity

of the victim's statements because law enforcement officers failed to disclose the

victim's criminal history in the affidavit.  Intentional or reckless omissions may

negate the showing of probable cause in a search warrant.  *See United States v.*

*Estrada*, 733 F.2d 683, 686 (9th Cir. 1984).  It is Defendant's burden to make a

"substantial showing" that the omissions were intentional or reckless; his

allegations must be accompanied by an offer of proof.  *United States v. Chavez-*

*Miranda*, 306 F.3d 973, 979 (9th Cir. 2002).  Defendant has offered no proof

beyond his assertions that the Deputy James Pelissier, in swearing out the affidavit,

intentionally or recklessly omitted information about the victim's past criminal

convictions.  ECF No. 166

Further, Defendant must show that such omissions, even if they were

intentional or reckless, undermined the sufficiency of the affidavit.  *See Estrada*,

733 F.2d at 686.  The victim's criminal record consists of juvenile convictions for

ORDER RE: PRETRIAL MOTIONS ~ 5

third-degree possession of stolen property, third-degree theft, and third-degree

malicious mischief.  None of these crimes bear on the honesty or credibility of the

victim.  *See, e.g.*, *United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982)

("Generally, crimes of violence, theft crimes, and crimes of stealth do not involve

dishonesty or false statement . . . . [and therefore] do not bear directly on the

likelihood that the defendant will testify truthfully." (internal citations and

quotation marks omitted)).  Nor does the fact that victim admitted to using

methamphetamine with Defendant impinge her credibility.  *See, e.g.*, *Estrada*, 733

F.2d at 686 ("Admissions of crimes . . . carry their own indicia of credibility—

sufficient at least to support a finding of probable cause to search.") (quoting

*United States v. Harris*, 403 U.S. 573, 583 (1971)).  Adding to her credibility, the

victim positively identified Defendant's car and house to the police, and she

showed physical scrapes and bruising corroborating her statements regarding the

assault.  The magistrate had sufficient indications of the veracity and base of

knowledge of the victim's statements to conclude, as a matter of common sense,

that it was fairly probable the drugs and guns were located in Defendant's

residence.

Finally, Defendant contends that even if there was probable cause to issue a

warrant to search his house, there was not probable cause to issue a warrant to

search his car.  The totality of the circumstances in this case also made it

ORDER RE: PRETRIAL MOTIONS ~ 6

reasonable for the magistrate to conclude it was fairly probable that the car contained contraband or evidence of drug sales.  At the time Defendant was stopped, he admitted he tried to evade police by turning onto a dirt road and accelerating away.  Defendant was immediately arrested by the investigating officers on a felony warrant out of Idaho charging him with possession of a controlled substance with intent to distribute.  Given this information demonstrating Defendant's possible connection with drug trafficking and his expressed intension to avoid police contact, Deputy Pelissier's statement that narcotic users will often travel with narcotics, and the victim's statements regarding the large zip-lock of methamphetamine, the guns, and Defendant's comment that he obtained the house in exchange for $25,000 of methamphetamine, it was reasonable for the magistrate to conclude that Defendant was in the business of selling methamphetamine and that he would likely use his car to further that enterprise.   As such, the magistrate had a substantial basis for concluding that Defendant's car contained contraband or evidence of his alleged trafficking.

There is also no basis in the record for seriously contending that the good faith exception to the exclusionary rule does not apply.  *United States v. Leon*, 468 U.S. 897 (1984).

Accordingly, Defendant's motion to suppress evidence seized pursuant to the warrant is denied.

ORDER RE: PRETRIAL MOTIONS ~ 7

**3.  Motion to Dismiss/Challenge Sufficiency of Indictment** (**ECF No. 167**)

Defendant contends the indictment against him must be dismissed as it does "not charge a necessary element" of the offense and all the elements have not been submitted to the grand jury.  ECF No. 167.  Defendant reasons that simply charging "50 grams or more of pure (actual) methamphetamine" does not allow him to make an informed decision regarding possible sentences and specifically the upper limits of the range of punishment.  *Id*. at 3–4.

The United States asserts the indictment properly asserts the elements of the offense and the quantity necessary for the punishment sought.  ECF No. 202.

Defendant is charged in count 1 of the superseding indictment with conspiracy to possess with intent to distribute 50 grams or more of pure (actual) methamphetamine.  ECF No. 172.  The elements of a drug conspiracy under 21 U.S.C. § 846 are (1) there was an agreement to accomplish an objective made criminal by § 841(a)(1), which prohibits the possession with intent to distribute a controlled substance; and (2) the defendant intended to commit the underlying offense.  *See United States v. Suarez*, 682 F.3d 1214, 1219 (9th Cir. 2012).  There is no requirement to prove an overt act in furtherance of the conspiracy, an illegal agreement alone is sufficient.  *Id*. (citing *United States v. Shabani*, 513 U.S. 10, 15-16 (1994)).  Defendant correctly observes that the type and quantity of drugs involved determines the statutory penalty associated with the crime, 21 U.S.C.

ORDER RE: PRETRIAL MOTIONS ~ 8

§ 841(b), and must be submitted to the jury (grand and petite) in order for

increased statutory maximum penalties to apply.  *See United States v. Cortes*, 757

F.3d 850, 861 (9th Cir. 2014) (*citing Apprendi v. New Jersey*, 530 U.S. 466

(2000)).  The Supreme Court has further held:

> [] *Apprendi* 's definition of "elements" necessarily includes not only
> facts that increase the ceiling, but also those that increase the floor.
> Both kinds of facts alter the prescribed range of sentences to which a
> defendant is exposed and do so in a manner that aggravates the
> punishment.  Facts that increase the mandatory minimum sentence are
> therefore elements and must be submitted to the jury and found
> beyond a reasonable doubt.

*Alleyne v. United States*, 133 S.Ct. 2151, 2158 (2013) (citations omitted).  But

here, the Superseding Indictment alleges the type and quantity of controlled

substance which would invoke the highest penalty under the statute—10 years to

life imprisonment.  There is no showing that the United States did not present

evidence as to the type and quantity of drugs here.

　　　　Defendant's complaint that he cannot calculate where within that range his

potential sentence will lie misses the mark, too.  The jury does not decide the

ultimate sentence, but only the operative facts that will inform the court as to the

range of sentences available.  Since *United States v. Booker*, 543 U.S. 220 (2005),

the sentencing guidelines are only advisory—a district court must correctly

calculate the guideline range before imposing a reasonable sentence.  *See United*

ORDER RE: PRETRIAL MOTIONS ~ 9

1    *States v. Carty*, 520 F.3d 984, 991–94 (9th Cir. 2008).  Defendant's motion is

2    denied.

3    **4.  Motion to Suppress Pole Camera Evidence (ECF No. 168)**

4           Defendant contends that the warrantless installation and use of a pole camera

5    to continuously record all activity in the public alleyway behind his house

6    constituted a warrantless search under the Fourth Amendment.  He argues such a

7    search is an unreasonable intrusion into his privacy interests and therefore all

8    evidence obtained from the camera must be suppressed.

9           The Fourth Amendment protects "[t]he right of the people to be secure in

10   their persons, houses, papers, and effects against unreasonable searches and

11   seizures."  U.S. Const. amend. IV.  "[A] Fourth Amendment search occurs when

12   the government violates a subjective expectation of privacy that society recognizes

13   as reasonable."  *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (citing *Katz v.*

14   *United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)) (quoted in *United*

15   *States v. Gonzalez*, 328 F.3d 543, 546 (9th Cir. 2003)).  The Supreme Court

16   recently held in *United States v. Jones* that, while the reasonable expectation of

17   privacy test is not the exclusive test for evaluating whether a Fourth Amendment

18   search occurred, cases "involving merely the transmission of electronic signals

19   without trespass would *remain* subject to the [reasonable expectation of privacy]

20   analysis."  132 S.Ct. 945, 953 (2012) (emphasis in original).  As such, to determine

ORDER RE: PRETRIAL MOTIONS ~ 10

whether a search was conducted under the Fourth Amendment in this case, this Court must determine whether Defendant had a "reasonable expectation of privacy" in the location and activities observed by the pole camera.

"[W]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351. Law enforcement agents may use their resources to conduct surveillance where they have a legal right to occupy. *See, e.g.*, *Florida v. Riley*, 488 U.S. 445, 449 (1989) ("[T]he police may see what may be seen 'from a public vantage point where [they have] a right to be'. . . ." (quoting *California v. Ciraolo*, 476 U.S. 207, 213 (1986))). "A person has a stronger claim to a reasonable expectation of privacy from video surveillance than against a manual search." *United States v. Gonzalez*, 328 F.3d 543, 548 (9th Cir. 2003) (citing *United States v. Taketa,* 923 F.2d 665, 675 (9th Cir. 1991)) (noting that the Ninth Circuit has held that the Fourth Amendment forbids warrantless videotaping of private offices and hotel rooms). However, videotaping in public places does not violate the Fourth Amendment. *Id.*; *see also Jones*, 132 S. Ct. at 953 ("This Court has to date not deviated from the understanding that mere visual observation does not constitute a search.").

For example, a district court found that law enforcement officials violated a defendant's reasonable expectation of privacy where a neighbor acting for the state

ORDER RE: PRETRIAL MOTIONS ~ 11

conducted round-the-clock video surveillance of defendant's fenced back yard for

fifty-six days. *Shafer v. City of Boulder*, 896 F. Supp. 2d 915 (D. Nev. 2012).

Similarly, in affirming a conviction based on evidence derived through video

surveillance of the defendant's back yard from a camera placed on a power pole,

the Fifth Circuit held that: (1) the video surveillance constituted a search for

Fourth Amendment purposes because he had a reasonable expectation of freedom

from such surveillance in his back yard; but (2) the search warrant authorizing the

surveillance was proper and did not violate defendant's Fourth Amendment rights.

*United States v. Cuevas-Sanchez*, 821 F.2d 248 (5th Cir. 1987). However, the

Tenth Circuit held that warrantless installation of silent video surveillance cameras

on telephone poles outside an accused narcotics offender's house, and outside the

house of another person, was held not to violate the accused's Fourth Amendment

rights. *United States v. Jackson*, 213 F.3d 1269 (10th Cir. 2000) (noting that the

cameras could not view within the houses and could observe only what any

passerby would easily have been able to observe, thus, concluding that the accused

had no reasonable expectation of privacy intruded upon by the cameras), *vacated

on different grounds*, 531 U.S. 1033 (2000).

    The evidence presented at the suppression hearing demonstrated that the

pole camera only recorded activity that occurred in the public alleyway behind

Defendant's detached garage. No law enforcement agent trespassed on any

ORDER RE: PRETRIAL MOTIONS ~ 12

property in which Defendant had a privacy interest while installing the camera.[1]

The position of the camera was such that it could not observe more than the roof of

Defendant's garage and the alleyway directly adjacent to the garage.  While the

pole camera was capable of zooming and panning, FBI Special Agent Edward

Jacobson offered uncontradicted testimony that the investigating officers never

manipulated the camera to observe any area beyond the alleyway.  Indeed, any

further observation of the Defendant's property was obscured by trees as well as a

neighboring house and detached garage located directly between the pole camera

and Defendant's own house and garage.  See Exhibits A and C.  Special Agent

Jacobson testified that the camera could not and did not observe the front or back

door of the house and none of its windows.  See Exhibit C as illustrative of the pan

toward the house, but the view does not even come close to the house.  Indeed,

based on his testimony, the camera did not view the street in front of the house

either.  Based on the photographs introduced, as well as Special Agent Jacobson's

testimony regarding the location of the camera and the intervening property, the

Court concludes the camera did not directly observe Defendant's property or

activities which occurred on his property or inside his home.  Instead, the camera

---

[1] The camera was mounted on a utility pole owned by a utility company and located on its easement 150 to 200 yards away from the property.  The utility company consented to the installation of the camera on the pole.

ORDER RE: PRETRIAL MOTIONS ~ 13

only observed activity which occurred in the public alleyway behind his garage.

Defendant does not have a legitimate expectation of privacy in activities which

occurred in that public alleyway, readily observable by any passerby.  As such,

Defendant's motion to suppress the pole camera evidence is denied.

**5.  Motion to Dismiss Case Re: Speedy Trial Violation (ECF No. 171)**

Defendant contends he has been continuously held in custody since August

6, 2013, and that his speedy trial rights have been violated such that the charges

should be dismissed against him.  ECF No. 171 at 7.  He asserts violations of Fed.

R. Crim. P. 48(b), the Sixth Amendment, and 18 U.S.C. § 3161(c)(1).

The grand jury issued an indictment against the Defendant on January 7,

2014.  ECF No. 31.  Defendant did not appear in this judicial district on the charge

until March 18, 2014.  ECF No. 83.  Prior to that time, Defendant had been held in

custody on other charges by other jurisdictions, including Whitman County,

Washington, and the District of Idaho.  See ECF No. 196-1.  Once Defendant was

brought to this court to answer to the charges, less than forty nine days elapsed

before the court granted a co-defendant's motion to continue the trial.  The Court

entered a finding declaring excludable under the speedy trial clock the time from

May 1, 2014, when the motion was filed, until July 28, 2014, when the new trial

was scheduled.  ECF No. 124.  Defendant signed a written waiver of his speedy

trial rights, agreeing to this continuance.  ECF No. 127.  Defendant later sought a

ORDER RE: PRETRIAL MOTIONS ~ 14

continuance, which the Court granted and declared excludable under the speedy

trial clock the period from July 7, 2014, when the motion was filed, until

September 29, 2014, the new trial date.  ECF No. 158.  Defendant again signed a

written waiver agreeing to this continuance.  ECF No. 150.  Accordingly, there has

been no violation of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), requirement that

Defendant be brought to trial within seventy days (absent excludable delay).

With respect to a challenge based on defendant's speedy trial rights under the

Sixth Amendment, the court considers four factors:  (1) the length of the delay; (2)

the reason for the delay; (3) the defendant's assertion of speedy trial rights; (4) and

prejudice as a result of the delay.  *Doggett v. United States*, 505 U.S. 647, 651–52

(1992).  A presumptively prejudicial length of delay must be shown to consider the

remaining factors.  *Id.*  Courts generally have found that delays approaching one

year, between indictment and trial, are presumptively prejudicial.  *See United

States v. Gregory*, 322 F.3d 1157, 1161–62 (9th Cir. 2003).  A primary reason for

the delay in this case was defendant's pretrial detention in the District of Idaho and

the length of time necessary to resolve those charges.  The remaining delay is

attributed to the Defendant's own need for trial preparation or that of his co-

defendants' with which he agreed.  Thus, Defendant has not shown that the

government's conduct caused the delay, or most importantly, that he suffered any

actual prejudice as a result.

ORDER RE: PRETRIAL MOTIONS ~ 15

1    Dismissal under Rule 48(b) is likewise unwarranted in this case. A Rule

2    48(b) dismissal should be imposed only in extreme circumstances. *United States v.*

3    *Sears, Roebuck and Co., Inc*., 877 F.2d 734, 738 (9th Cir. 1989) (dismissal with

4    prejudice is proper only after a "forewarning of the consequences" of further

5    delay). No such circumstances exist in this case. Defendant's motion is denied.

6    ### 6. Motion to Suppress Statements (ECF No. 188)

7    Defendant seeks to suppress certain statements he made to state officers

8    when he was arrested on August 6, 2014, on state charges. ECF No. 18. The

9    United States agrees that it will not introduce any of those statements in its case-in-

10   chief.

11   Accordingly, Defendant's motion is denied as moot.

12   ### 7. Motion for Disclosure of Brady Material (ECF No. 189)

13   Defendant complains that he has not received all the Brady material he is

14   entitled. ECF No. 189. The United States responds generally that all Brady

15   material has been provided or will be provided as it is located or identified relative

16   to a particular witness that will be called at trial. "The defendant bears the initial

17   burden of producing some evidence to support an inference that the government

18   possessed or knew about the *Brady* material." *United States v. Pelisamen*, 641

19   F.3d 399, 408 (9th Cir. 2011) (internal quotation marks omitted). Defendant has

20

ORDER RE: PRETRIAL MOTIONS ~ 16

not produced any evidence that the government possesses or knows of any undisclosed *Brady* material.  Accordingly, Defendant's motion is denied.

**IT IS HEREBY ORDERED:**

1.  Defendant's Motion for Bill of Particulars (ECF No. 141) is **DENIED**.

2.  Defendant's Motion to Suppress Evidence Seized (ECF No. 142) is **DENIED**.

3.  Defendant's Motion to Dismiss/Challenge Sufficiency of Indictment (ECF No. 167) is **DENIED**.

4.  Defendant's Motion to Suppress Pole Camera Evidence (ECF No. 168) is **DENIED**.

5.  Defendant's Motion to Dismiss Case re: Speedy Trial Violation (ECF No. 171) is **DENIED**.

6.  Defendant's Motion to Suppress Statements (ECF No. 188) is **DENIED**.

7.  Defendant's Motion for Disclosure of Brady Material (ECF No. 189) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and furnish copies to counsel.

**DATED** September 22, 2014

THOMAS O. RICE
United States District Judge

ORDER RE: PRETRIAL MOTIONS ~ 17